UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Gayla Hammett Ridgell, | ) | Civil Action No. 5:18-cv-1703-KDW |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Andrew M. Saul, Commissioner of Social Security,[1] | ) | ORDER |
| Defendant. | ) | |

This social security matter is before the court pursuant to 28 U.S.C. § 636(c) and Local

Civil Rule 83.VII.02 (D.S.C.) for final adjudication, with the consent of the parties, of Plaintiff's

petition for judicial review. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain

judicial review of a final decision the Commissioner of Social Security ("Commissioner"),

denying her claim for Disability Insurance Benefits ("DIB") pursuant to the Social Security Act

("the Act"). Having carefully considered the parties' submissions and the applicable law, the

court affirms the Commissioner's decision for the reasons discussed herein.

I.      Relevant Background

        A.      Procedural History

        On July 8, 2014,[2] Plaintiff filed an application for DIB alleging a disability onset date of

June 9, 2014. Tr. 188-89. Her claim was denied initially, Tr. 88, and upon reconsideration, Tr.

107, and Plaintiff requested a hearing, Tr. 119-20. On April 25, 2017, a hearing was held before

an Administrative Law Judge ("ALJ") and testimony was taken from Plaintiff, who was

represented by counsel, and from a vocational expert ("VE"). Tr. 38-76. On June 28, 2017, the

---

[1] Andrew M. Saul became Commissioner of Social Security in June 2019. Commissioner Saul is hereby substituted for the former Acting Commissioner, Nancy A. Berryhill, as the named defendant in this action. *See* 42 U.S.C. § 405(g), Fed. R. Civ. P. 25(d).
[2] Although the Application Summary is dated July 29, 2014, Tr. 188, according to the Disability Determination and Transmittal Plaintiff's protected filing date is July 8, 2014, Tr. 88.

ALJ issued an unfavorable decision finding Plaintiff was not disabled. Tr. 16-30. Plaintiff requested review of the decision from the Appeals Council, Tr. 169-83, and the Appeals Council denied review on April 26, 2018, making the ALJ's decision the Commissioner's final decision for purposes of judicial review, Tr. 1-6. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed June 21, 2018. ECF No. 1.

B.      Plaintiff's Background

Born in April 1964, Plaintiff was 50 years old on her alleged onset date of June 9, 2014. Tr. 228. In her August 18, 2014 Disability Report-Adult Plaintiff noted that she completed the 12th grade and had not completed any type of specialized job training or vocational school. Tr. 233. She listed her past relevant work ("PRW") as: law firm legal secretary (1999-2003), greenhouse supervisor (2002-2011), and Department of Agriculture egg grader (Sept. 2011-June 9, 2014). *Id.* Plaintiff indicated that she stopped working on June 9, 2014, because of her medical conditions of back and neck problems. Tr. 232.

In a January 27, 2015 Disability Report-Appeal, Plaintiff indicated that as of August 15, 2014 she had a new mental limitation. Tr. 269. Plaintiff noted: "I am afraid to drive myself and extremely paranoid of riding in a vehicle since being able to begin driving. Increasing nightmares." *Id.* Regarding her activities Plaintiff indicated that the injuries she sustained in the motor vehicle accident compromised her abilities and her condition was "chronic thus limiting day-to-day activities." Tr. 272.

In a subsequent Disability Report-Appeal dated May 28, 2015, Plaintiff indicated that she was diagnosed with PTSD on February 27, 2015. Tr. 288. She also noted that her "back injury (T-4 fracture) causes pain with any increased activity; [she is] not able to sit for long periods of time." *Id.* Plaintiff also noted that she cannot return to her prior employment and her injury

prevented her from seeking employment. *Id.* Plaintiff indicated that in February 2015 she had cancer surgically removed from her lower right leg and skin grafted from her upper right leg. Tr. 289. Plaintiff noted that she is unable to complete daily activities in a timely manner and activity—even carrying a purse—increases pain. Tr. 293.

C.     Relevant Medical History

Plaintiff was seen on February 21, 2014 by Dr. James A. Loging of Palmetto Bone and Joint-Newberry for her complaints of left knee pain. Tr. 435. Plaintiff stated that she had been "having problems for a long time and this is gradually getting worse." *Id.* Plaintiff opted to proceed with an injection rather than an arthroscopy. *Id.* Plaintiff returned for follow-up on June 27, 2014 and noted that the injection had helped but the pain had returned. Tr. 434. Plaintiff received another injection. *Id.*

Plaintiff was involved in a motor vehicle accident ("MVA") on June 9, 2014 and was transported via ambulance to the Newberry County Memorial Hospital with a laceration to her head and complaints of neck pain. Tr. 418. Plaintiff's laceration was sutured, and she was discharged with instructions regarding wound care and not to work the next day. *Id.* That same day Plaintiff was sent to Laurens County Memorial Hospital to undergo a CT scan of her head. Tr. 419. Report of the CT scan indicated that "No acute intracranial hemorrhage is seen." Tr. 392.

On June 16, 2014 Plaintiff was seen for follow-up at Newberry Internal Medicine for removal of sutures and continued complaints of neck pain and stiffness. Tr. 405. Plaintiff reported that she had not been taking any pain medication and was hesitant to take narcotic pain medication. *Id.* Plaintiff was given a course of muscle relaxers and advised not to return to work at that time due to the nature of her job. *Id.* Plaintiff returned on June 25, 2014 and reported that

she "continues to experience some pain between her shoulder blades into the thoracic spine, but reports that the muscle spasms and cramping are much better. She no longer has a headache." Tr. 407. Plaintiff was sent for a CT scan of her neck for further evaluation. *Id.*

On June 26, 2014 Plaintiff returned to Newberry County Memorial Hospital for CT scans of her neck and thoracic spine. Tr. 412-13. There were no acute findings within the cervical spine. Tr. 412. The impression of the CT of the thoracic spine was as follows: "Mild superior end plate depression of T-4 which could be related to a mild acute or chronic compression fracture. No other abnormality is identified." Tr. 413.

Plaintiff was seen on July 24, 2014 by Dr. Karl Lozanne of Columbia Neurosurgical Associates, P.A. Tr. 426-27. Plaintiff complained of neck and upper back pain. Tr. 426. Dr. Lozanne examined Plaintiff and reviewed her CT scans. He indicated that the "subtle compression of the T4 vertebral body" appeared to be a chronic condition as there was no significant loss of height, no retropulsed fragment, and no apparent signs of stenosis. Tr. 426-27. Dr. Lozanne indicated that physical therapy might be beneficial and referred her to physical therapy and for massage of the cervical and thoracic spine. Tr. 427. He also provided her with a prescription for muscle relaxers. *Id.*

In a January 27, 2015 follow-up appointment with Dr. Mark A. Davis of Newberry Internal Medicine Plaintiff indicated an aversion to driving and riding in a car. Tr. 489-90. She noted she had flashbacks from the injury and difficulty sleeping. Tr. 490. On physical examination Dr. Davis noted that her station and gait were a "little bit awkward and stiff but she is stable walking. She cannot bend. She has a stiffness of her spine and lack of mobility." *Id.* Dr. Davis's impression was: "1. Evolving post-traumatic stress disorder which will need to be dealt

with with counseling. 2. Traumatic injury to the spine with residual disability - - I think she probably could benefit by voca rehab and continued to occupational and physical therapy." *Id.*

On April 13, 2015, Plaintiff had a Psychiatric Evaluation at Behavioral Health Services with Dr. John Steele. Tr. 501-04. Dr. Steele's initial diagnostic impression related to a clinical disorder was "Post-traumatic stress disorder, history of alcohol use disorder mild." Tr. 503. He started Plaintiff on a trial of Zoloft 25 mg with a low-dose of Ativan 0.5 mg to take as needed for breakthrough anxiety. *Id.* He advised Plaintiff not to mix the Ativan with alcohol and suggested she try over-the-counter melatonin to help with insomnia. Tr. 503-04. Dr. Steele encouraged Plaintiff to begin individual counseling and provided her with a list of local counselors and he also advised her to limit her caffeine consumption to help with her anxiety. Tr. 504.

D.      Administrative Proceedings

Plaintiff appeared with counsel for her administrative hearing in Greenwood, South Carolina on April 25, 2017. Tr. 38. VE Dr. Robert Brabham also appeared and testified. *Id.*

1.      Plaintiff's Testimony

In response to questions from the ALJ Plaintiff confirmed her birthdate and address and testified that her current height and weight was 5'1" and 113 pounds. Tr. 43-44. Plaintiff testified that over the past year and a half she lost about 35 pounds due to lymphoma which she stated was "a relatively new diagnosis." Tr. 44. Plaintiff stated that every six weeks she was having blood work done and a PET scan. As a result of her last PET scan she recently had a colonoscopy that indicated she had diverticulitis. Tr. 45. Plaintiff testified that her lymphoma diagnosis was made in October of the last year after an inconclusive biopsy of one lymph node and removal of her left lymph node. Tr. 45-46. Plaintiff confirmed that she has not done any

treatment, chemotherapy, or immunotherapy for lymphoma and at this point she was being monitored. Tr. 46.

Plaintiff testified that she lived with her husband and no one else lived at the residence. Tr. 46. She also confirmed that she had a driver's license, but she testified that she did not drive and has not driven since her accident due to PTSD. Tr. 46-47. Plaintiff confirmed that she graduated from high school, and when she worked for the USDA she "had an egg grader's license." Tr. 47-48. Plaintiff testified that in 2002 she worked for Gregory Williams as a legal secretary. Tr. 48. Plaintiff stated that she worked for a number of years as a supervisor for Carter and Holmes Incorporated, which was an orchid nursery. Tr. 48-49. Plaintiff testified that she "ran the operation of nine greenhouses and probably around 10 to 12 employees . . . ." Tr. 49. Plaintiff confirmed she then worked for the State of South Carolina and the Department of Agriculture as an egg grader. *Id.* Plaintiff confirmed that she has not worked since June 9, 2014. Tr. 50. Plaintiff confirmed that she received short-term disability from the State of South Carolina but her application for long-term disability was denied. Tr. 50-51.

When asked what prevented her from working, Plaintiff testified to back and neck pain, PTSD, and being unable to drive. Tr. 51-52. Plaintiff also testified to having Raynaud's syndrome[3] and severe headaches. Tr. 52. Other than the inability to drive, Plaintiff testified that her PTSD also affected her daily activities because she becomes frustrated and angry about not being able to do things she would have normally been able to do without any problem. Tr. 53. Plaintiff testified to difficulties with concentration and loss of sleep. Tr. 53-54. Plaintiff stated

---

[3] "Raynaud's disease is a rare disorder of the blood vessels, usually in the fingers and toes. It causes the blood vessels to narrow when you are cold or feeling stressed. When this happens, blood can't get to the surface of the skin and the affected areas turn white and blue. When the blood flow returns, the skin turns red and throbs or tingles. In severe cases, loss of blood flow can cause sores or tissue death." *See* https://medlineplus.gov/raynaudsdisease.html (last visited

that her lymphoma caused interruptions with sleep because she cannot control her body temperature and she has "drenching night sweats and chills." Tr. 54. Plaintiff stated that in early 2015 she started having the symptoms associated with Raynaud's syndrome and her hands and fingers will go white and numb. *Id.* Plaintiff testified that symptoms were random and "it can happen several times a week, sometimes it might only happen once every couple of weeks." *Id.* Plaintiff stated the symptoms usually last "at least a couple hours." Tr. 55. Plaintiff testified that since the accident she experiences headaches at least three times a week. *Id.* Plaintiff stated that she experiences back pain in her upper mid back and understands that she has a bone spur in that location. *Id.* She stated that she experiences pain in her "entire neck, but especially at the base of [her] skull." *Id.* Plaintiff testified that all of her pain relates back to her motor vehicle accident. *Id.* Plaintiff testified that she can stand or walk for "maybe an hour at most" before needing to sit down due to back pain. Tr. 56. She stated that it was the same for sitting and described her pain as "a constant chronic pain." *Id.* Plaintiff testified she could lift or carry "three to five pounds at most." *Id.* As an example of something she lifted and realized that she should not have, Plaintiff identified a gallon of water. Tr. 57. Plaintiff testified that going back to the accident, her ability to stand, walk, sit, or lift has never been better than as she currently described. *Id.* Plaintiff testified that she takes prescription Ibuprofen or Motrin, which at 800 milligrams is a higher dosage than what is available over-the-counter. *Id.* Plaintiff stated that she takes acetaminophen for headaches and a prescription formulation of Excedrin Migraine tablets. Tr. 58-59. Plaintiff testified that she is not taking any medications for mental impairments currently. Tr. 59. Plaintiff stated that she "stopped taking everything that had been prescribed for [her] around July of last year because [she] had some swelling in places and [she] didn't know if the medications may

Aug. 21, 2019).

have been affecting [her] somehow." *Id.* Plaintiff stated that she had been prescribed Hydrocodone which is "highly addictive and so [she was] just adamant that [she's] not going to take anything more than [she has] to take." *Id.*

Plaintiff testified that on a typical day she wakes up, has coffee, and watches the news. Tr. 60. Plaintiff stated that she may do some spot sweeping or wash a few dishes. *Id.* She stated that her husband takes her grocery shopping and they try to coincide trips to the grocery store with her doctor's appointments. Tr. 60-61. Plaintiff stated that she has trouble with impatience when grocery shopping and standing in line. Tr. 61. She also stated she was uncomfortable being around people and crowds. *Id.* Plaintiff testified that her husband "does all the getting everything in the buggy, pushing the buggy, getting it out of the buggy, into the car, he does all that." *Id.*

In response to questions from her counsel Plaintiff testified that her husband is employed with SCE&G and had been with them for a number of years. Tr. 62. Plaintiff testified that before the accident, when she got home from work, she would "mow the grass, bring wood in for the fire, start[ ] the fire, . . . straighten up, clean, cook." *Id.* Plaintiff stated that for outdoor chores, she has a few plants that she waters. Tr. 63. Plaintiff testified that she used to hunt and fish but can no longer do any of that. *Id.* Plaintiff stated that her husband helps her with cooking by lifting pots. *Id.* Plaintiff testified that her PTSD problems apply to driving as well as riding as a passenger and she gets very nervous, especially at intersections. Tr. 63-64. Plaintiff confirmed that her pain interferes with concentration, paying attention, and memory. Tr. 64.

After the VE testified Plaintiff stated in closing that she wanted to return to work. Tr. 74. She testified: "I'd go back to work as an egg grader tomorrow if I could do the job, but I can't do it." *Id.*

2.    VE's Testimony

The VE testified that Plaintiff's past work is described in the Dictionary of Occupational Titles ("DOT") as egg grader, SVP of 2, light but performed occasionally as medium, DOT number 529.687-074; greenhouse supervisor/manager, SVP of 7, medium, DOT number 405.131-010; and legal secretary, SVP of 6, sedentary, DOT number 201.362-010. Tr. 66-67. The ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education, and past jobs limited to the "light exertional level, frequent climbing of ramps and stairs; occasional climbing of ladders, ropes, or scaffolds; frequent stooping, kneeling, crouching, and crawling." Tr. 67. The ALJ asked the VE whether such an individual could perform the past work. The VE responded that the legal secretary position would be within those limits, and some egg grader positions could be light, but jobs with the Department of Agriculture would likely be medium. Tr. 67-68. The ALJ confirmed that as generally performed, the positions of legal secretary and egg grader would be available. Tr. 68. The ALJ asked about other available work with no consideration of transferable skills and the VE identified the following categories as examples: assembler/fabricator jobs, light exertion, SVP of 2, DOT number 739.687-078, with 360,000 jobs available nationwide; hand packer jobs, light, SVP of 2, DOT number 589.687-014, with approximately 400,000 nationwide; and production inspectors, light, SVP of 2, DOT number 529.687-114, with 200,000 nationwide. Tr. 68-70. The VE confirmed that his testimony was consistent with the DOT. Tr. 70.

In the ALJ's second hypothetical he changed the first hypothetical to only occasional stooping, kneeling, crouching, and crawling and added a "limitation to simple routine tasks; time off task would be accommodated by normal breaks; only occasional interaction with the public; and no driving or operation of heavy equipment." Tr. 70-71. The ALJ asked if the hypothetical

individual could perform any of the past jobs and the VE responded in the negative but stated that "the jobs that [he] cited in response to the first hypothetical continue to meet the second one as well." Tr. 71.

For the ALJ's third hypothetical he asked if he added either of the following two limitations—three absences a month or 20 percent time off task in addition to normal breaks—could the hypothetical individual perform any competitive employment. Tr. 71. The VE responded in the negative but noted that the limitations were not addressed in the DOT but are "addressed in some labor publications and other articles and numerous job descriptions." Tr. 72. The ALJ noted that he was not asking about sedentary work. *Id.*

Plaintiff's counsel asked, "if a person can only function for up to a third of the day, would there be any jobs in the national economy that are out there?" Tr. 73. The VE responded in the negative, noting that the ALJ had already posed 20 percent, so 33 percent would be worse. *Id.* Counsel asked about two-thirds of the day, and the VE again responded in the negative. *Id.*

II.    Discussion

    A.    The Commissioner's Findings

In his June 28, 2017 decision, the ALJ made the following findings of fact and conclusions of law:

> 1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.
>
> 2.    The claimant has not engaged in substantial gainful activity since June 9, 2014, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3.    The claimant has the following severe impairments: spine disorder; dysfunction of major joints; and PTSD (20 CFR 404.1520(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can frequently climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds; and occasionally stoop, kneel, crouch, and crawl. The claimant can perform simple, routine tasks. The claimant's time off task can be accommodated by normal breaks. The claimant can have occasional interaction with public. She can perform no driving or operation of heavy equipment.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.      The claimant was born on April 19, 1964 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from June 9, 2014, through the date of this decision (20 CFR 404.1520(g)).

Tr. 21-23, 28-29.

B.      Legal Framework

    1.      The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for

benefits, who are not of retirement age, who properly apply, and who are "under a disability,"

defined as:

> inability to engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result in
> death or which has lasted or can be expected to last for a continuous period of not
> less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations

promulgated under the Act have reduced the statutory definition of disability to a series of five

sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing

considerations and noting "need for efficiency" in considering disability claims).  An examiner

must consider the following:  (1) whether the claimant is working; (2) whether the claimant has a

severe impairment; (3) whether that impairment meets or equals an impairment included in the

Listings;[4] (4) whether such impairment prevents claimant from performing PRW; and (5)

whether the impairment prevents the claimant from performing specific jobs that exist in

significant numbers in the national economy. *See* 20 C.F.R. § 404.1520. These considerations are

---

[4] The Commissioner's regulations include an extensive list of impairments ("the Listings" or
"Listed impairments") the Agency considers disabling without the need to assess whether there
are any jobs a claimant could do. The Agency considers the listed impairments, found at 20
C.F.R. Part 404, Subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R.
§ 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the
listed impairments for at least one year, he will be found disabled without further assessment. 20
C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish
that his impairments match several specific criteria or be "at least equal in severity and duration
to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see
Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his

sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146, n.5 (regarding burdens of proof).

2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the

---

impairment is disabling at Step 3).

Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 428 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. *See Vitek*, 428 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

C.     Analysis

Plaintiff alleges the ALJ erred in his assignment of weight to the opinions of various medical providers. Pl.'s Br. 2-10, ECF No. 16. The Commissioner asserts that substantial evidence supports the ALJ's evaluation of the medical opinions. Def.'s Br. 15, ECF No. 18.

1.     Treating Physician's Opinion

Social Security regulations require that medical opinions in a case be considered together

with the rest of the relevant evidence. 20 C.F.R. § 404.1527(b).[5] "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).

Generally, the opinions of treating physicians are entitled to greater weight than other evidence and the regulations have enumerated particular factors for ALJs to consider when evaluating those opinions. *See* 20 C.F.R. § 404.1527(c). If a treating source's medical opinion is "well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight[.]" SSR 96–2p;[6] *see also* 20 C.F.R. § 404.1527(c)(2) (providing treating source's opinion will be given controlling weight if well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record). However, "the rule does not require that the testimony be given controlling weight." *Hunter v. Sullivan,* 993 F.2d 31, 35 (4th Cir. 1992) (per curiam); *see also Craig v. Chater,* 76 F.3d 585, 590 (4th Cir. 1996) (finding a physician's opinion should be accorded "significantly less weight" if it is not supported by the clinical evidence or if it is inconsistent with other substantial evidence). The ALJ has the discretion to give less weight to the opinion of a treating physician when there is "persuasive contrary evidence." *Mastro v. Apfel,* 270 F.3d, 171, 176 (4th Cir. 2001). The regulations provide that if a treating source's opinion is

---

[5] For claims filed on or after March 27, 2017, the regulations changed as to how adjudicators would consider and articulate medical opinions. *See* 20 C.F.R. § 404.1520c. Because Plaintiff's claim was filed prior to March 27, 2017, 20 C.F.R. § 404.1527 is applicable.
[6] SSR 96-2p was rescinded effective March 27, 2017 for claims filed on or after March 27, 2017 because of revisions to the final rules including that "adjudicators will not assign a weight, including controlling weight, to any medical opinion for claims filed on or after March 27, 2017." *See* 2017 WL 3928305. However, because this claim was filed prior to that date, SSR 96-

not accorded controlling weight, the ALJ should consider "all of the following factors" in order to determine the weight to be accorded to the medical opinion: examining relationship; treatment relationship, including length of treatment relationship, frequency of examination, and nature and extent of treatment relationship; supportability; consistency with the record as a whole; specialization of the medical source; and other factors. 20 C.F.R. § 404.1527(c); *see also Johnson v. Barnhart*, 434 F.3d at 654. The Fourth Circuit has held that it is not necessary for an ALJ to recite each factor concerning weight, as long as the "order indicates consideration of the all pertinent factors." *Burch v. Apfel,* 9 F. App'x 255, 259 (4th Cir. 2001).

While an ALJ is under no obligation to accept any medical opinion, he must nevertheless explain the weight afforded such opinions. *See* SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996). "Where there are multiple opinions from a single source, an ALJ does not necessarily have to discuss each opinion separately to make clear the weight given it and the underlying reasons." *Id.* (citing SSR 96-2p, 1996 WL 374188, at *2). "'[T]he opinions of a treating physician are not entitled to great weight where they are contradicted by the physician's own treatment notes, or by other evidence.' Nor will an ALJ 'give any special significance to the source of an opinion on issues reserved to the Commissioner,' including the residual functional capacity." *Bryant v. Colvin*, No. 8:14-CV-02087-TLW, 2015 WL 5783813, at *2 (D.S.C. Sept. 28, 2015). However, opinions reserved to the Commissioner must still be evaluated and accorded appropriate weight. SSR 96-5p, 1996 WL 374183, at *3.

Statements that a patient is "disabled" or unable to work or meets the Listing requirements or similar statements are not medical opinions, but rather, are administrative findings reserved for the Commissioner. SSR 96-5p, 1996 WL 374183 at *2 (July 2, 1996).

---

2p is applicable.

"However, opinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner." *Id.* at *3.

    a.   Opinions of Mark Davis, M.D.

Plaintiff argues that to "assign little weight to Dr. Davis' office notes is in violation of the Treating Physicians Rule." Pl.'s Br. 2. The Commissioner contends that the "ALJ reasonably explained that Dr. Davis' opinions were temporary in nature, based on subjective complaints, and inconsistent with the record." Def.'s Br. 16.

On October 1, 2014, Dr. Davis completed the Standard Insurance Company Attending Physician's Statement State of South Carolina Long Term Disability Benefits form questionnaire. Tr. 468-69. Dr. Davis noted that Plaintiff's primary diagnosis was thoracic vertebrae fracture and her secondary diagnosis was neck pain. Tr. 468. He indicated Plaintiff's current symptoms were neck pain, upper back pain and stiffness, and muscle spasm and these symptoms appeared on June 9, 2014 (the date of Plaintiff's MVA). *Id.* Dr. Davis noted his treatment plan was physical therapy and exercise. *Id.* With regard to Plaintiff's physical capacities he noted that Plaintiff could frequently lift 10 pounds and a maximum of 20 pounds. Tr. 469. He indicated that Plaintiff could walk/stand at one time for one hour and sit for one hour. *Id.* He noted Plaintiff could occasionally bend/stoop, grasp, and reach. *Id.* Dr. Davis indicated that Plaintiff's prognosis was "improved" and that he expected a fundamental or marked change in her condition in a year. *Id.* He noted that a reasonable work modification that would assist her in returning to work would be no repetitive lifting. *Id.*

On December 1, 2014 Dr. Davis wrote a letter "To whom it may concern" regarding Plaintiff's condition. Tr. 471. He noted that Plaintiff was "still undergoing physical therapy and is not at goal." *Id.* He also noted that she was not able to do much lifting without considerable pain and that was an impediment to her seeking employment and going back to her previous job. Dr. Davis stated that Plaintiff was limited in her activity and would "likely remain in this situation for the next 2 months minimum." *Id.* He recommended ongoing physical therapy. *Id.* Dr. Davis's treatment note from Plaintiff's follow-up appointment on the same date reflected the information contained in his letter. Tr. 477-78.

At Plaintiff's follow-up appointment on January 27, 2015, Dr. Davis dictated a memo "To whom it may concern" stating that Plaintiff had "been vigorous in her pursuit of physical therapy after stabilization of the injuries. So far there is incomplete recovery. She is still showing some slow progress and that mode of therapy is to be continued." Tr. 487-88. He also indicated a "new problem" involving PTSD related to driving. Tr. 488. Dr. Davis noted that Plaintiff "has no striking deformities and she is able to walk. She has difficulty in doing any lifting or bending. She cannot sit for any length of time and certainly no time with an unsupported back." *Id.* Although he stated that he did not think Plaintiff would be able to return to her "same level of function at her previous job" he thought that she could pursue vocational rehabilitation. *Id.*

On April 27, 2015 Dr. Davis wrote a memo "To [whom] it may concern" specifically regarding Plaintiff's physical therapy. Tr. 597. He noted that Plaintiff has had a slow recovery from her MVA but had shown steady recovery with the help of physical therapy. He noted she had objective improvement with weight loss and better mobility and recommended continued physical therapy. *Id.*

At a regular office visit on August 18, 2015, Plaintiff's chief complaint was that she was still having back pain. Tr. 583. Dr. Davis noted that Plaintiff was recovering from surgery to her leg to remove cancer that required a skin graft. Tr. 584. He noted that Plaintiff had persistent episodic back pain and that she "can stand for about 10 minutes at a workstation before having to sit back down and take a load off of her back." *Id.* He indicated that because of her leg surgery she had not been to physical therapy in the last few weeks. *Id.* He noted that Plaintiff was living alone and could do all her household chores, although after a "couple of days of doing routine house chores" she again had severe back pain. *Id.* On physical examination he noted that Plaintiff had gained weight and her gait was slower than average for a person of her age. He also noted that her ability to turn her neck was "a little bit limited in terms of lateral movement. This is probably only about 15 degrees or so. Extension is possible and is closer to full than the lateral movement." *Id.* He also noted that Plaintiff developed pain in the thoracic spine with persistent or repetitive movement of her arms and shoulders, and she had "some muscle spasm in the mid and lower postural muscles on the right." *Id.* Dr. Davis recommended yoga to help with flexibility and that Plaintiff return to physical therapy. *Id.* On the same date as the office visit Dr. Davis completed the Standard Insurance Company's Physician's Report-Musculoskeletal form. Tr. 594-97. He noted that Plaintiff's primary barrier for returning to work was pain, but that he anticipated Plaintiff being able to return to work in three-to-six months, depending on her progress. Tr. 594. He indicated that Plaintiff could occasionally sit, stand, walk, balance, walk on uneven surfaces, kneel, reach at or above shoulder level, lift 1-10 pounds, carry 1-10 pounds, and push/pull 1-10 pounds. Tr. 595. He indicated that Plaintiff could not bend/stoop or crawl, and that it would not be safe for her to climb ladders or drive. *Id.* He indicated that Plaintiff had no limitations with using her hands for repetitive actions. *Id.* He noted that his current treatment

plan was physical therapy, yoga, NSAIDs and occasional muscle relaxers. Tr. 596. He also noted that Plaintiff's recovery and return to work were complicated by PTSD due to her MVA. *Id.* Dr. Davis also indicated that he would corroborate Plaintiff's complaints. *Id.*

The ALJ assigned "little weight" to these statements finding "they were temporary and/or addressed issues soon after the motor vehicle accident, detracting from their probative value." Tr. 27. The ALJ indicated that Dr. Davis's August 2015 limitations "seem premised upon the claimant's subjective pain complaints, rendering them less persuasive. Moreover, these opinions are inconsistent with the imaging evidence and objective findings on examination discussed above." *Id.*

The ALJ's decision indicates consideration of all the pertinent factors in 20 C.F.R. § 404.1527(c) as he noted specifically that Dr. Davis was Plaintiff's treating physician, discussed treatment records over several months following Plaintiff's MVA, and discussed the inconsistencies he noted in the opinions. Accordingly, the court finds that the ALJ did not err in properly applying the treating physician rule.

"When, as here, an ALJ denies a claimant's application, the ALJ must state 'specific reasons for the weight given to the treating source's medical opinion,' to enable reviewing bodies to identify clearly the reasons for the ALJ's decision." *Sharp v. Colvin*, 660 F. App'x 251, 257 (4th Cir. 2016). In *Sharp*, the Fourth Circuit determined that the "ALJ did not summarily conclude that [the doctor's] opinion merited little weight" because the ALJ explained why he discredited the opinion, remarking that the claimant's limitations were not supported by the doctor's office notes. *Id.* Here, as required by SSR 96-2p, the ALJ's decision contained specific reasons for the weight given to Dr. Davis's opinion—the statements were temporary, the

limitations seemed to be based on Plaintiff's subjective pain complaints, and the opinions were inconsistent with the objective medical evidence. Tr. 27.

The court is not to weigh evidence or substitute its judgment for that of the Commissioner but is to determine whether the ALJ's weighing of the evidence is supported by substantial evidence in the record. *See generally Hays v. Sullivan*, 907 F.2d at 1456 (noting judicial review limited to determining whether findings supported by substantial evidence and whether correct law was applied). An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up "specious inconsistencies," *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992), or has failed to give a sufficient reason for the weight afforded a particular opinion, *see* 20 C.F.R. § 404.1527(c). The fact that the ALJ noted that the opinions "seem premised" on Plaintiff's subjective complaints of pain is not reversible error. *See, e.g., Johnson v. Barnhart,* 434 F.3d at 657 (physician's opinion that was based on the claimant's subjective complaints could be rejected); *Mastro v. Apfel,* 270 F.3d at 178 (fact that physician's diagnosis was based largely upon claimant's self-reported symptoms allowed ALJ to assign that physician's opinion lesser weight); *Craig v. Chater*, 76 F.3d at 590 (finding "sufficient evidence justifie[d] the ALJ's rejection" of physician's opinion where opinion relied on claimant's "subjective reports of pain"). The ALJ's reasons for discounting Dr. Davis's opinions are supported by substantial evidence.

### b. Opinions of Physical Therapists

On September 4, 2014, Physical Therapist ("PT") Sutton completed the Standard Insurance Company Attending Physician's Statement State of South Carolina Long Term Disability Benefits form questionnaire. Tr. 650-51. He noted that Plaintiff was referred to him by

Dr. Karl Lozanne and she first consulted with him in July of 2014 and had multiple visits in August 2014. Tr. 650. PT Sutton noted that in response to treatment Plaintiff was improving with neck range of motion and decreased pain, but her thoracic pain was the same and worse with activity. *Id.* PT Sutton indicated that Plaintiff could frequently lift 10 pounds with a maximum of 20 pounds; and she could walk/stand and sit for one hour at a time in an eight-hour work day. Tr. 651. He noted that Plaintiff could occasionally bend/stoop, grasp, and reach. *Id.* He noted her prognosis was "improved," and he expected a fundamental or marked change in her condition in one year. *Id.* In order to return to work PT Sutton noted that Plaintiff should "move to another position that she does not have to repetitively lift." *Id.*

The ALJ assigned "little weight" to this medical source statement finding that the "opinion is temporary and, in any event, appears to be an overstatement of the claimant's limitations based on her subjective complaints." Tr. 27.

On April 7, 2017 PT Mark Waldrop of Newberry Physical Therapy completed a Functional Capacity Evaluation ("FCE") of Plaintiff. Tr. 855-58. PT Waldrop noted the following in the behavioral profile section of the FCE:

> She placed in the high pain profile. Most of her complaints of pain were in the groin and left suboccipital region, where the lymph nodes were swollen. She did tend to exaggerate her neck stiffness in that her range of motion was within functional limits yet she was resistant to move her neck during normal ADLs.

Tr. 856. PT Waldrop also noted that Plaintiff had moderate depression and appeared to have anxiety that could be associated with PTSD. *Id.* Based on the FCE he concluded that Plaintiff was "unable to work." *Id.* He noted that she could walk for two minutes at a normal speed before having to stop due to "excruciating left groin pain (lymph nodes swelling)." *Id.* PT Waldrop indicated that Plaintiff would be incapable of returning to her job of grading eggs and at her "current functional level, she is incapable of even handling sedentary work." *Id.*

The ALJ considered PT Waldrop's FCE and assigned it little weight stating that the "opinion appears premised upon subjective pain complaints and self-limiting by the claimant (Exhibit 31F)." Tr. 27. The ALJ noted PT Waldrop was not an "acceptable medical source" under the regulations, and his statement regarding an inability to work was not an opinion but was an administrative finding reserved to the Commissioner. Tr. 27-28.

Plaintiff takes issue with the ALJ's assignment of little weight to the opinions of the physical therapists. Pl.'s Br. 5. Plaintiff cites to a "response" to the ALJ's decision prepared by PT Waldrop on August 27, 2017 that attempted to offer objective evidence to support his earlier opinion. *Id.* The Commissioner argues that substantial evidence supports the ALJ's assessment of their opinions "where the ALJ, among other things, appropriately considered their status as a non-acceptable medical source and their reliance on Plaintiff's subjective complaints (Tr. 27-28)." Def.'s Br. 24. The Commissioner notes that the Appeals Council did not accept the additional evidence submitted by PT Waldrop because it determined that it did not relate to the period at issue. *Id.* at 26 (citing Tr. 2). On reply Plaintiff argues that because many doctors rely on physical therapists for treatment and evaluation, it is improper for the ALJ to "totally discount" their opinions. Pl.'s Reply, ECF No. 20 at 8. Plaintiff also contends on reply that PT Waldrop's August 2017 letter "was not an effort to rehabilitate her case as much as it was to indicate to the Administrative Law Judge that Plaintiff had objective findings which would support her level of pain." *Id.* at 9.

As an initial matter, a physical therapist is not an "acceptable medical source" as defined in the Social Security regulations; therefore, the opinions of Sutton and Waldrop are not entitled to controlling weight. *See* 20 C.F.R. § 404.1513.[7] However, the opinion of a physical therapist

---

[7] 20 C.F.R § 404.1513 was revised effective March 27, 2017. As Plaintiff's claim was filed prior

may be considered by the ALJ under the same factors as an acceptable medical source. 20 C.F.R. § 404.1513(d).

As with the opinions of Dr. Davis, the ALJ noted that the opinions of the physical therapists were temporary and based on Plaintiff's subjective complaints. Tr. 27. Furthermore, opinions from medical sources on issues reserved to the Commissioner, such as disability, are not entitled to any special weight. *See* 20 C.F.R. § 404.1527(d); SSR 96–5p, 1996 WL 374183, at *2, 5.

As for PT Waldrop's August 27, 2017 letter, the Appeals Council found that it did not relate to the period at issue and therefore did not affect the ALJ's decision. Tr. 2. The Appeals Council must consider evidence submitted by a claimant with a request for review "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 95–96 (4th Cir. 1991), *superseded on other grounds by* 20 C.F.R. § 404.1527. The Appeals Council need not review or consider new evidence that relates only to a time period after the ALJ issues the decision. *See* 20 C.F.R. § 404.976(b)(1)[8]. Additionally, the Appeals Council need not explain its reason for denying review of an ALJ's decision. *Meyer v. Astrue*, 662 F. 3d 700, 702 (4th Cir. 2011). The court finds no error in the ALJ's consideration of the opinions of the physical therapists.

### c.   Opinion of John Steele, M.D.

As noted in the Background section of this Order, on April 13, 2015, Dr. John Steele conducted an Initial Psychiatric Evaluation of Plaintiff related to her fear of being in a car. Tr.

_____

to that date, the cited version of the regulation is applicable.

[8] 20 C.F.R. § 404.976 was revised effective January 17, 2017. Because Plaintiff's claim was filed prior to that date, the cited version of the regulation is applicable.

501-04. Dr. Steele's initial diagnostic impression related to a clinical disorder was "Post-traumatic stress disorder, history of alcohol use disorder mild." Tr. 503. He assigned Plaintiff a GAF (Global Assessment of Functioning) score of 55. *Id.* Dr. Steele prescribed low doses of Zoloft and Ativan and encouraged Plaintiff to begin individual counseling. Tr. 504.

The ALJ assigned "partial weight to the assessment of Dr. Steele including the GAF score of 55, indicative [of] moderate symptoms or moderate difficulty in social, occupational, or school functioning (Exhibit 15F, 3)." Tr. 28. The ALJ noted that the assessment appeared to be consistent with the weight of the evidence, but the GAF score represented the clinician's subjective evaluation at a single point in time and "may vary from day to day, from time to time, and between practitioners." *Id.* The ALJ determined that other evidence in the record was more informative and therefore assigned only partial weight to the GAF score. *Id.*

Plaintiff takes issue with the ALJ's findings regarding Plaintiff's GAF score and argues that Plaintiff may have scored even lower on another day. Pl.'s Br. 6. Plaintiff argues that the "only reason for the ALJ to give partial weight rather than give full weight is that it helps the ALJ to determine that claimant is not disabled." *Id.* The Commissioner contends that "the ALJ appropriately considered the consistency of Dr. Steele's opinion and GAF score against the mental health record" noting that under the regulations, consistency is a factor for evaluation of medical opinions. Def.'s Br. 22 (citing 20 C.F.R. § 404.1527(c)(4)). The Commissioner notes that "in conjunction with the objective evidence, the ALJ reasonably considered the objective mental health evidence, and limited Plaintiff to simple, routine tasks; with time off-task accommodated by normal breaks; occasional interaction with the public; and no driving or operation of heavy equipment (Tr. 28)." *Id.* at 23-24.

The court notes that the fifth edition of the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders*, published in 2013, has discontinued use of the GAF for several reasons, including "its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice." *See* Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders*, 16 (5th ed. 2013) ("*DSM–V*"). The Social Security Administration issued an Administrative Message instructing ALJs how to treat GAF scores. *See* SSA, AM-13066, "Global Assessment of Functioning (GAF) Evidence in Disability Adjudication" (effective 22 July 2013); SSA, AM-13066 REV, "Global Assessment of Functioning (GAF) Evidence in Disability Adjudication-REV" ("AM-13066-REV") (effective 14 Oct. 2014). The Social Security Administration directed ALJs to continue to consider GAF scores as part of the medical opinion evidence under 20 C.F.R. § 404.1527(a)(2). *See* SSA, AM 13066-REV. The Administrative Message provides in part:

> GAF ratings are opinion evidence and need supporting evidence to give them weight. By itself, the GAF rating cannot be used to "raise" or "lower" someone's level of function. A GAF rating is only a snapshot opinion about the level of functioning. It is one opinion that we consider with all the evidence about a person's functioning. Unless the clinician clearly explains the reasons behind his or her GAF rating, and the period to which the rating applies, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis.

> Unless the GAF rating is well supported and consistent with other evidence in the file, it is entitled to little weight under our rules. A GAF rating is usually an estimate of the best level of functioning over the last week or so, or over the entirety of the past year. It rarely overrides a more specific longitudinal picture. Because of its drawbacks, you should not rely on GAF evidence as the primary support for findings of impairment severity or of mental limitations.

> A GAF rating alone is never dispositive of impairment severity.

*Coppage v. Colvin*, No. 4:14-CV-211-D, 2015 WL 9899342, at *11 (E.D.N.C. Dec. 14, 2015), *report and recommendation adopted*, No. 4:14-CV-211-D, 2016 WL 270217 (E.D.N.C. Jan. 21, 2016) (quoting AM-13066-REV).

In this case the ALJ noted that other evidence may outweigh GAF scores and found that the other evidence he previously described was more informative and given more weight. Tr. 28. As part of his residual functional capacity ("RFC") assessment the ALJ discussed Plaintiff's psychological impairment of PTSD related to her accident in conjunction with Plaintiff's hearing testimony and Dr. Steele's assessment. Tr. 26. Based on his findings, the ALJ provided the following limitations to Plaintiff's RFC:

> Due to PTSD and moderate limitations in concentrating, persisting, and [maintaining] pace, secondary to her pain, the undersigned finds that the claimant can perform simple, routine tasks. The claimant's time off task can be accommodated by normal breaks. The claimant can have occasional interaction with public due to moderate difficulties with interacting with others. Due to PTSD related to the accident and her testimony that she has not driven since the accident, the undersigned finds that the claimant can perform no driving or operation of heavy equipment.

*Id.* The ALJ articulated sufficient reasons for assigning partial weight to the GAF score provided by Dr. Steele while finding his assessment "consistent with the weight of the evidence of no more than moderate functional limitations due to PTSD, including the objective findings on the day of the evaluation." Tr. 28.

### d.  Opinion of Karl Lozanne, M.D.

Dr. Karl Lozanne of Columbia Neurosurgical Associates, P.A. examined Plaintiff on September 11, 2014 after she started physical therapy. Tr. 443. Dr. Lozanne noted that Plaintiff was "now actively moving her neck, unlike her original evaluation in which she would keep her neck completely stiff." *Id.* Plaintiff indicated that the physical therapy was helpful but complained of persistent pain in the mid-thoracic region. *Id.* On physical examination Dr.

Lozanne noted Plaintiff had "normal but slow full range of motion of her cervical spine. Mild palpation of the thoracic spine region elicits significant pain." *Id.* He reviewed Plaintiff's recent MRI results that "showed very mild degeneration of the thoracic spine with no significant abnormality or distinct sequelae of trauma." *Id.* In his Plan, Dr. Lozanne felt Plaintiff could begin to increase her activity level and saw no need for any neurosurgical intervention. Plaintiff requested that Dr. Lozanne complete a form for long-term disability, but he declined to do so because he "did not see an indication for long term disability from her condition." *Id.* Dr. Lozanne felt that Plaintiff could "perform light-duty activities and with a complaint of pain potentially just limit lifting. [He] would have anticipated that she would have been able to return to full-duty activities at this stage, but she has subjective complaints. A transition towards full-duty is appropriate." *Id.* Dr. Lozanne continued Plaintiff's physical therapy and he expected to release Plaintiff to work in six weeks. *Id.*

The ALJ assigned great weight to the opinion of Dr. Lozanne. Tr. 27. The ALJ found that Dr. Lozanne's "assessment appears consistent with the weight of the evidence including his objective findings on examination, the imaging evidence, and the opinions of the State agency medical consultants." *Id.*

Plaintiff contends that at the time of his examination "Dr. Lozanne believed that she was doing much better than she actually was." Pl.'s Br. 10. The Commissioner argues that the ALJ's analysis of Dr. Lozanne's opinion is supported by substantial evidence because the ALJ recognized his status as a treating physician, his examination of Plaintiff in the course of treatment, and considered his opinion in the context of the medical record. Def.'s Br. 19-20. The Commissioner notes that given Dr. Lozanne's evaluations "showing few functional deficits

beyond [Plaintiff's] subjective complaints, the ALJ reasonably assigned Dr. Lozanne's opinion great weight (Tr. 27, 443)." *Id.* at 21.

The ALJ provided specific reasons for the weight given to Dr. Lozanne's opinion noting that the "assessment appears consistent with the weight of the evidence including his objective findings on examination, the imaging evidence, and the opinions of the State agency medical consultants. Tr. 27. Substantial evidence supports the ALJ's consideration of Dr. Lozanne's opinion. *See Dunn v. Colvin*, 607 F. App'x 264, 267 (4th Cir. 2015) ("An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' or has failed to give a sufficient reason for the weight afforded a particular opinion.") (*citing Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992) and 20 C.F.R. § 404.1527(d)).

e.  State Agency Consultant Opinions

On December 15, 2014, State agency physician Dr. William Hopkins completed a Physical Residual Functional Capacity Assessment of Plaintiff for her initial disability determination. Tr. 83-85. He indicated that Plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. Tr. 83. He noted that Plaintiff could stand and/or walk for six hours in an eight-hour workday with normal breaks and sit for a total of six hours in an eight-hour workday. Tr. 84. He indicated that Plaintiff could frequently climb ramps/stairs, stoop, kneel, crouch, and crawl; occasionally climb ladders/ropes/scaffolds; and she had no limitations with balancing. *Id.* Dr. Hopkins determined Plaintiff had no manipulative, visual, communicative, or environmental limitations. Tr. 84-85.

On April 8, 2015, State agency physician Dr. Larry Caldwell conducted a Physical Residual Functional Capacity Assessment for reconsideration of Plaintiff's disability

determination. Tr. 102-04. Dr. Caldwell's assessment contained the same limitations as the assessment of Dr. Hopkins. Tr. 102-03.

The ALJ gave great weight to these assessments finding them consistent with the weight of the evidence—including the opinion of Dr. Lozanne. Tr. 27. The ALJ also found the "opinions are consistent with the imaging evidence showing at most a mild compression fracture from the motor vehicle accident (Exhibit 21F, 11-12), and subsequent imaging showing the fracture had healed (Exhibit 20F, 16)." *Id.*

"State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." SSR 96–6p, 1996 WL 374180, at *2. Pursuant to SSR 96–6p, findings of fact made by state-agency medical and psychological consultants regarding the nature and severity of a claimant's impairments must be treated as expert opinion evidence of non-examining sources by the ALJ. SSR 96–6p, 1996 WL 374180, at *1. "Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists." 20 C.F.R. § 404.1527(e)(2)(i). However, the ALJ may not ignore these opinions and must evaluate them in accordance with 20 C.F.R. § 404.1527. SSR 96–6p, 1996 WL 374180, at *1.

Plaintiff disagrees with the ALJ giving great weight to these opinions because the State agency physicians never treated or examined her. Pl.'s Br. 7. Citing to *Millner v. Schweiker*, 725 F.2d 243 (4th Cir. 1984), Plaintiff states that "[i]t is well established that the opinion of a non-examining physician, such as a state agency physician or medical advisor is not substantial evidence to support a decision." Pl.'s Br. 2. However, that case actually reads: "A report of a non-examining, non-treating physician should be discounted and is not substantial evidence

*when contradicted by all other evidence in the record.*" *Millner v. Schweiker*, 725 F.2d at 245 (emphasis added). In her argument regarding the weight given to the opinions Plaintiff attributes erroneously some findings to Dr. Caldwell asserting that Dr. Caldwell's impression was evolving PTSD, that he indicated Plaintiff's concentration was mildly impaired, and that he "also found and made reference that claimant was able to vacuum and mop and do housework." Pl.'s Br. 8. However, the findings cited by Plaintiff and attributed to Dr. Caldwell were references contained in the medical evidence of record and were merely cited in the reconsideration opinions. Tr. 99 (referencing Plaintiff's 1/27/15 visit with Newberry Internal Medicine and 4/13/15 visit with Behavioral Health Services); Tr. 104 (referencing 2/10/15 office visit with HPRC physical therapy). Actually, it was Plaintiff's physical therapist who indicated Plaintiff was able to mop and vacuum. Tr. 672.

The opinions of the State agency physicians were supported by the other evidence of record available at the time of their opinions. *Tanner v. Comm'r of Soc. Sec.*, 602 F. App'x 95, 101 (4th Cir. 2015) (upholding ALJ's assignment of great weight to State agency consultant's opinions because each opinion "included notes with references to specific evidence from the record that supported the consultant's findings" and although "the state agency consultants did not have the benefit of a full record, the ALJ did, and he made clear that their findings were consistent with the evidence of record, including evidence submitted since the date of reconsideration."). *See also Gordon v. Schweiker,* 725 F.2d 231, 235 (4th Cir. 1984) (where non-examining sources' opinions are reasonably consistent with the record as a whole, an ALJ may assign significant weight to them); *Johnson,* 434 F.3d at 656–57 (same); *Stanley v. Barnhart,* 116 F. App'x 427, 429 (4th Cir. 2004) (same).

Plaintiff appears to challenge the weight given by the ALJ to all of the above-referenced opinions as inadequate or improper. However, upon review of the ALJ's decision, the record, and the parties' arguments, the court finds that Plaintiff has failed to demonstrate that the ALJ's decision is unsupported by substantial evidence or based on an error of law. *Craig v. Chater,* 76 F.3d at 589 (defining "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance" and stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); *Blalock v. Richardson,* 483 F.2d at 775 (indicating that regardless of whether the court agrees or disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence).

### 2. Plaintiff's Credibility

Plaintiff argues that the "credibility of claimant was not considered by the ALJ. Claimant's strong, consistent and constant work record should have been considered by the ALJ." Pl.'s Br. 10. The Commissioner contends that substantial evidence supports the ALJ's evaluation of Plaintiff's subjective complaints and the "ALJ was not required to make a special allowance for Plaintiff's work history." Def.'s Br. 31.

In March 2016 the Social Security Administration published SSR 16-3p, 2016 WL 1119029 (2016), which rescinds and supersedes SSR 96-7p, eliminates use of the term "credibility," and clarifies that subjective symptom evaluation is not an examination of an individual's character. SSR 16-3p applies to determinations and decisions made on or after March 29, 2016. Although SSR 16-3p eliminates the assessment of credibility, it requires assessment of most of the same factors considered under SSR 96-7p.

SSR 16-3p provides a two-step process for evaluating an individual's symptoms. First, the ALJ must determine whether the individual has a medically determinable impairment "that could reasonably be expected to produce the individual's alleged symptoms." SSR 16-3p, 2017 WL 5180304, at *3. In the second step the ALJ must "evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities . . . ." *Id.* at *4.

Using the two-step process the ALJ found, "[a]fter careful consideration of the evidence" that Plaintiff's statements about her symptoms affected her ability to work "only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence." Tr. 24.

"[W]hile a long work history may be a factor supporting credibility, it is not controlling." *Maner v. Colvin*, No. CA 1:12-2969-RBH, 2014 WL 4656383, at *5 (D.S.C. Sept. 17, 2014). Citing to Plaintiff's Work History Report and the SSA's Detailed Earnings Query, the ALJ noted Plaintiff's past work history at Step Four in the sequential evaluation process. Tr. 28. The ALJ found that her "work was substantial gainful activity, was performed long enough for the claimant to achieve average performance, and was performed within the relevant period (Exhibits 3E; 7D)." *Id.* At Step Five the ALJ noted that in determining whether Plaintiff could make a successful adjustment to other work he considered her RFC, age, education, and work experience in conjunction with the Medical-Vocational Guidelines. Tr. 29. In this case substantial evidence supports the ALJ's findings regarding Plaintiff's subjective statements. To the extent the ALJ erred in failing to specifically discuss Plaintiff's work record in determining credibility, such error was harmless. *See Maner*, 2014 WL 4656383, at *5; *Jones v. Colvin*, No. 1:12-2894-TMC, 2013 WL 5883382 (D.S.C. October 30, 2013).

III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court finds that Plaintiff has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. *See Craig,* 76 F.3d at 589; *see also* 42 U.S.C. § 405(g). Therefore, it is hereby ORDERED that the Commissioner's decision be affirmed.

IT IS SO ORDERED.

August 21, 2019                                                    Kaymani D. West
Florence, South Carolina                                  United States Magistrate Judge